Mr. Morrison is going to take four minutes to argue the Commerce Clause. I'd also like to reserve three minutes for rebuttal. The appellants in this case have had their constitutional rights deprived by Rule 34. The question presented has already been answered by the Supreme Court in Piper and in the Friedman case. In Piper, the Supreme Court squarely held an attorney's opportunity to practice law is a constitutionally protected right, protected by the Privileges and Immunities Clause, not only because of the lawyer's role in the national economy, but because lawyers champion locally unpopular claims, they vindicate federal rights, and they have a duty in our Constitution to do this. Piper essentially changed the rules of the game by holding that attorneys have the constitutionally protected privileges and immunity. Now, in Piper, the Supreme Court squarely stated that many of the states that have erected fences against out-of-state lawyers have done so primarily to protect their lawyers from professional competition, and this is not a legitimate state interest. The counsel Piper and the other cases you cite are focused on residency requirements, are they not? Yes, Your Honor. We don't have that here, do we? As I understand it, Arizona applies the same, I'm going to call it AOM, because that's what you all call it, the same AOM requirements for both in-house residents and those who don't reside in the State of Arizona. Isn't that correct? Yes, Your Honor. That is absolutely correct, 100 percent correct. The privileges and immunities argument, at least as to this part, those cases are inapposite, are they not? Because there's no residency requirement there. Let me address that, Your Honor. Okay. Not even remotely, not even remotely. And the reason why is Hillside Dairy basically says the privileges and immunities clause is applicable any time the state in practical effect or by proxy discriminates against out-of-state attorneys. And this is what they have. But they treat in-state attorneys exactly the same way. How can that be a violation of either the privileges and immunities clause or, for that matter, the dormant commerce clause? Well, Your Honor, let me break that answer down in two questions. First of all, when the Supreme Court held an attorney's opportunity is constitutionally protected, they did so in the context of that case. They didn't make that holding because the petitioner there worked in a beauty supply or walked dogs or did something else. They made that holding there because attorneys have a duty to champion claims that are unpopular, to stand up in front of this court, just like I'm doing here, against opposition and speak the truth and speak their truth. Piper essentially said, we're not going to allow you to discriminate against this woman because she lives over there. It's not allowable. But, counsel, forgive me. You're ignoring what I said. We're talking about the fact that the state of Arizona treats lawyers who live in and are residents of the state of Arizona exactly the way it treats counsel who live in another state. And Friedman, which is a later case, 1988, distinguishes the Piper analysis to make clear that as long as there's an important state interest involved, that they can regulate what the lawyers do. It isn't just an open and closed situation. Is it under privileges and immunities? Well, Your Honor, thank you for getting to Friedman. My pleasure. In Friedman, the court held that admission on motion comes within the ambit of the privileges and immunities clause. This was the square holding of the case. In that case, Virginia argued she can take the bar exam. And the Supreme Court said no. The question is, is admission on motion protected by the privileges and immunities clause? And we hold it is. That's the question. The fact that she can take the bar exam has nothing to do with it. And what Arizona is doing is exactly the same as what Virginia did in Friedman. Arizona is saying if you come from 40 states, you get reciprocity. But if you come from 10 disfavored states, you do not get reciprocity. And the reason you don't get reciprocity is because you come from a jurisdiction that doesn't provide reciprocity to our attorneys. This is not a legitimate state interest. But, counsel, we've already talked about that. That's the residency requirement. I thought we agreed upon that. And in this case, I would refer you to Hawkins v. Moss, which is a Fourth Circuit case, a situation just like this. What's wrong with the reasoning of Hawkins v. Moss? The reasoning is wrong because it was decided before the Supreme Court's decision in Piper and Friedman and Barna and Friedman. And it was decided before the Great Atlantic and Pacific Tea Company, where the Supreme Court under the Commerce Clause specifically invalidated reciprocity agreements. This isn't the first time the Supreme Court has invalidated reciprocity agreements, as Mr. Morrison will point out when he presents his argument. So my argument in response to your questions is that it's just not about residence. It's just not about citizenship. It's about discriminating against lawyers who are otherwise qualified because they come from someplace that is not favored. Counsel, do you have a Supreme Court case, or for that matter, a case of any other United States Court of Appeals that is on all fours with this case, meaning that the state, whatever it may be, treats lawyers who are residents of that state with respect to AOM admissions exactly as it does lawyers from other states and that have found that to be a violation of the Privileges and Immunities Clause? What case do you have? The case I have is Friedman. That doesn't – those facts are not the same, are they? Well, the case that I have here this morning before is Mr. Anderson is from Montana, and he's in the exact same situation as Myrna Friedman was in Virginia. Ms. Gervin, isn't she from Arizona? Allison Gervin is from Arizona. Yes. Mark Anderson is from Montana. He lives in Montana. He is challenging the privileges under the Privileges and Immunities Clause and the right to travel. So this is only his argument? His argument, yes. His argument. His argument. Our argument is the only difference between Friedman and Mr. Montana's case and Mr. Armstrong's case, Anderson's case, I'm sorry, is the names of the parties. That's the only difference. Virginia said you can't come in here because you're not a resident because you're not going to be a resident or a citizen of Virginia. That's the residency issue again, counsel. The reality is if a state says you have to be a resident of this state to get this treatment, and if you're outside the state, we're going to treat you differently, maybe you've got an argument. But at least under the Privileges and Immunities Clause, that's not what Arizona says. Arizona says to your plaintiff in Montana, hey, by all means, you know, as long as you qualify in the same way that a resident of Arizona does, fine. One of the things you can do is to take the bar exam and take it up to three times, as I understand it. He has not yet done that, as I understand it. Is that correct? Yes, Your Honor. So what's the problem? My response is that citizens from other states who grant reciprocity to Arizona can come in Arizona and get reciprocity. They can attend the one-day class on Arizona law and get reciprocity. But see, that's the Friedman case again, where Friedman said as long as you have a valid and substantial state interest, in this case, to see that Arizona's attorneys are treated the same as people from other states. What's wrong with that? I mean, they're saying, hey, you treat our people okay, we're going to treat your people okay, we're going to give you a little special break here. Isn't that a direct compliance with Friedman? I don't think so at all, Your Honor. Why not? I think our argument is that under Hillside Dairy, the question is not just discrimination against citizens, not just discrimination against residents. It's discrimination against qualified applicants who are members of the bar, who vindicate federal rights, who champion locally unpopular claims. That's the discrimination. You just can't say, well, you're a resident but not a citizen, and you're a citizen but a resident. They're intertwined. They both go together. Okay. See, I want to make sure we hear from Mr. Morrison. Thank you. Morning. May it please the Court. Alan Morrison for the amicus. The Dormant Commerce Clause protects states, prevents states from enacting economic protectionist legislation. Reciprocity as an economic protection tool has been outlawed by the Supreme Court in three cases, all of which are subsequent to Hawkins against Moss, beginning with the A&P case, followed by Sporhouse and the New Energy case. All three of them unanimously concluded that economic protectionism is engaged, is at issue when there's reciprocity. Well, you know, calling it protectionism is kind of sort of assumes the conclusion. It is, Your Honor, but those are the conclusions of the United States Supreme Court. It used that very phrase in both the A&P and in the New Energy case. Granted, but I'm saying that may not be the situation here. I mean, one of the justifications is that these rules encourage reciprocity, encourage commerce. That is precisely the justification that was put forth in the A&P case and again was put forth in New Energy, and in both of those cases, the Supreme Court unanimously rejected that as a permissive means of regulating commerce. Counsel, let me ask you this. Those cases, as well as the Sporhouse case, all involve, if you will, commodities. In the case of Great Atlantic Pacific Tea, there was milk products in Mississippi. In Sporhouse, it was groundwater in Nebraska and Colorado. And the New Energy involved ethanol. We're talking about a professional regulation. We're not talking about commodities. I wrote a dissent, a failure to take en banc on something our court did regarding California ethanol as well. I'm very familiar with the cases involving commodities, but this is not a commodity, is it? It is not, Your Honor. It's a service, and service is subject to regulation under the Commerce Clause. It may be, but are there any Supreme Court cases that say that they are treated the same for purposes of the Dormant Commerce Clause? I can think of no case on the Dormant Commerce Clause, but on the Positive Commerce Clause, which is the obverse of it. Goldfarb against the Virginia State Bar said that lawyers engage in commerce when they sell their services across state lines, and we surely have that here, Montana lawyer wanting to come down, Florida lawyer wanting to come over, a lawyer who moved from California to engage in commerce here in the State of California. All of those are objects of commerce. And the cases are legion in which the Supreme Court has said that services can be subject to regulation under the Commerce Clause. Let's assume that that's correct. The whole underpinning of the Dormant Commerce Clause is that one State treats the products or services of another State in a discriminatory fashion compared to those that it applies to its own residents. You've got all kinds of examples in the Supreme Court cases and others. But in this case, as I understand it, Arizona treats residents of other States exactly the same way it treats residents of its own State. How does the Dormant Commerce Clause even come into play here? Madison would be shocked, would he not? I don't purport to know what Madison would be shocked about, Your Honor. Well, Supreme Court purports to know what he says. As far as the Dormant Commerce Clause, I'm not sure Madison thought about the Dormant Commerce Clause. May I continue? Your Honor, the first thing is that it is true that discrimination is an important aspect of the Dormant Commerce Clause. But there's another important aspect, and that's what the A&P case is about, and that is protecting in-State residents from laws that benefit one segment of society. In that case, it was the milk producers in Louisiana. Here, it's the local lawyers who are getting the benefit of not. Why are they treated differently, though, counsel? That's what I'm not understanding. Perhaps you can point out an error in my analysis, but my understanding is that a resident of the State of Arizona has to go through exactly the same AOM procedure as somebody outside. You are correct, Your Honor. Where's the discrimination? There is no discrimination of that kind. But the Supreme Court has said even though there's no discrimination, that it is still unauthorized, forbidden by the Dormant Commerce Clause to require reciprocity because it harms the notion of a single United States with interstate free trade. This kind of practice, the Court said, would be perfectly acceptable for international obligations. But we are not separate States. We are all part of one union, and the Dormant Commerce Clause was put there to assure that States do not do this. Well, let's be clear. Some of the Supreme Court justices don't even think there is a Dormant Commerce Clause. It wasn't put there. It's the obverse of the Commerce Clause, and it's based on Madison's writings. Let's be clear about that. The Affirmative Commerce Clause was put there, Your Honor.  The Affirmative Commerce Clause was put there. Oh, first of all. I agree with you, Your Honor. But you're relying on the Dormant Commerce Clause. I am. It's the one that is sleeping, right? Yes, and one that was found in three Supreme Court cases. There were two dissents in the Water case, but not on this ground. Every other justice, Justice O'Connor, Justice Rehnquist, Justice Stevens, Justice Brennan, all of them, Justice Scalia most recently, all of them said reciprocity is an illegal weapon in effect. Per se? Virtually. It rejected the same. Well, not virtually. Let's be clear. You're saying? But it rejected. It did not say never, because the Court is careful not to say never. But it rejected the very same kind of rationale here. We're encouraging other States to do what we are doing here in Arizona. The Court said that's an unauthorized weapon under the Dormant Commerce Clause. Thank you, Your Honor. Counsel, let me just — correct me if I'm wrong again. The Great Atlantic, it seems to me, held that the specific reciprocity agreement was illegal because there was no valid global interest. But there is a valid global interest, is there not, in getting reciprocity for the Arizona State lawyers? The valid global interest in the A&P case was the same asserted interest as it is here that is to encourage other States in that situation, Louisiana, to grant reciprocity to milk producers from Mississippi. And the Court said that's out of bounds. So while I agree with the Court that there is no blanket prohibition, the same justification that was offered there was found insufficient, and it's insufficient here. Thank you, Your Honor. Thank you, Mr. Morrison. Good morning. May it please the Court. My name is Erin McCarthy, Arizona Assistant Attorney General, on behalf of the Justices of the Arizona Supreme Court. Appellants request this Court, as they did the District Court, to assert the broad authority of the Arizona Supreme Court to set standards for admission to its bar. The District Court correctly rejected their request, and we ask that this Court affirm its decision. What is the rationale for this reciprocity rule? What's the best case you have for it? Your Honor, the stated rationale for the reciprocity rule in the purview of the Arizona Supreme Court was to ensure that there was ease of admission on motion for Arizona licensed attorneys who go to comedy States. Mr. Morrison just got through saying that the Supreme Court has disavowed that rationale. I respectfully disagree with that, and I don't believe that any of the cases that Mr. Morrison cited in the amicus brief stand for that proposition at all. In fact, the Cattell case or the A&P case and the Sporehouse case are entirely distinguishable from the matter that is before you. Specifically, those cases involved States saying, you have to have reciprocity with us or your water doesn't come into our State at all and your milk doesn't come into our State. They were absolute foreclosures to the free flow of those goods. With respect to the Limbach case that they cite, while Ohio did not demand reciprocity, what it did do was it only gave its tax credit to the Ohio, I'm sorry, to States that did have reciprocity with Ohio. So the Indiana supplier of ethanol was not given that tax break and the court there found that that was a substantial burden on interstate commerce. We don't have any of those facts here. And the appellants, despite being given numerous and substantial opportunities in the district court to present any type of fact, have not demonstrated any type of economic protectionism here. And as Judge Smith has, of course, noted, there is no residency requirement. The lack of a residency requirement under the AOM, as well as the fact that there are alternate means of admission, in fact, two other methods of admission to the Arizona Supreme Court, is utterly fatal to their claims. I do want to point out that their 48-page, 97-paragraph complaint does not allege one claim against any of the named defendants. And again, while this circuit has not addressed the facts or the issues before you now, other circuits have. And while it's not biting on this circuit, it's very persuasive. And so any, as Your Honor mentioned, the Hawkins v. Moss, Morrison v. Board of Examiners, Shapiro v. Cook, several other circuits, 3rd, 4th, and 7th, for example, have been faced with the issue that Your Honors are faced with. And they have all determined that there is no violation of the equal protection, there's no violation of the Commerce Clause, there's no violation of privileged immunities or the First Amendment. Can you refresh my recollection? Are those cases before or after A&P? The Hawkins v. Moss is before A&P, and I believe that at least two of the others are after, Your Honor, if my memory is correct. But in any event, A&P, whether those cases came before or after, is so distinguishable from the case that we have here, because again, courts find significant when you have an absolute barrier to the free flow of goods or, in this case, services, that there is nonexistent here. I want to make sure I have your rationale pinned down. Judge Smith was making a distinction that these other cases dealt with commodities, these are services. I don't hear you saying that. I hear you saying this passes dormant Commerce Clause muster because there are alternative ways to be admitted. Is that the theory you're going on? That is, Your Honor. Not the distinction of commodities versus services. We did not make that distinction, Your Honor. No, we did not. Would you address the question of standing? Because you indicate that Ms. Girvin and Mr. Anderson should apply to be admitted by motion when it is clear that under the AOM rule they're not eligible and their application would be denied. Isn't it futile for them to apply? Well, Your Honor, and forgive me, I'm just looking here. This circuit, in particular, has, in Giannini v. Roehl, and I believe it's the Gordon v. Examiners, has indicated that even if it's futile to apply in this case, with respect to Your Honor's question, that there has been no federal deprivation of any right. And so we would argue, as we did below, that they lack standing. Now, the district court disagreed with that and, you know, and did determine that they had lack of standing for other reasons. But in any event, the district court did find that, you know, they did have the ability to launch facial challenges. How could it be otherwise? I mean, if the rule prohibits her from making the motion, she doesn't even have stand. I mean, what she doesn't have standing to do, she doesn't have standing to make the motion. She's making a, you know, she's banned by the rule from even making the motion, isn't she? Well, Your Honor, because California does not have comity, that is correct. That is correct. How else could she possibly challenge it? I mean, do you want her to go down to the Supreme Court and make a motion? I mean, they're going to tell her, can't you read English? It says you have to be this, that, or the other thing, you know. Well, Your Honor, and again, until she submits that application, you know, it's our position that she lacks standing. But in any event, the district court did allow them to proceed with their facial challenges. And after carefully considering those challenges, it did determine that the appellants or the plaintiffs below simply had no claim, that the justices were entitled to judgment as a matter of law. In this case, in effect, aren't we required to consider many of the underlying facts in order to even make a standing analysis? Well. In other words, the fact that neither of the two people so far had taken, I guess in one case I think she took a bar exam, failed it, but could do it twice again. The Montana resident had never taken the Arizona bar, could do it three times. Is that, don't we have to consider that in making a determination regarding standing? Your Honor, I would, yes, I would agree that you would. Absolutely. And they've simply taken no action. And then with respect to Ms. Girvin, she did not pass the bar exam, and she failed to seek review by the Arizona Supreme Court. And so again, it was our position below that indeed, that they did lack standing. And with respect to, I think we've, you know, we've talked about the equal protection, generally the Commerce Clause and the privileges and immunities. With respect to the First Amendment, certainly this Court and Mother's Head, as well as the Supreme Court, has noted that the states have the ability to regulate their bars. Subject to, in the First Amendment arena, just time, place and manner restrictions. Certainly the AOM is content neutral. The rule does not dictate an area of practice, the type of clients, or even where in Arizona lawyers must practice. So it is content neutral, and there's been no evidence to suggest otherwise. It is narrowly tailored to serve Arizona's legitimate interest of ensuring mutual treatment of its attorneys in comedy states, because without that rule, Arizona would not be able to ensure the mutual treatment. So therefore, it is narrowly tailored. And there are certainly alternate means of communication, because there are two other avenues for attorneys to be admitted to the Arizona bar. And I do want to point out that in particular, Plaintiff Coleman, who was a plaintiff below, he was admitted to the Arizona bar under one of the alternate paths for admission. And so with that, Your Honor, unless you have any other questions, we would respectfully request that this Court affirm the lower court's decision. Thank you, Ms. McCarthy. Mr. Genie will give you about a minute to rebuttal. I feel like I have to run a mile in 60 seconds, Your Honor. We have submitted claims under the 14th Amendment Privileges and Immunities Clause and five claims under the First Amendment that we haven't even addressed. My first response is opposing counsel's submission to this Court that all the reciprocity cases were or two of them were decided after Atlantic and Pacific as false. The only case that was decided after Atlantic and Pacific was the Morrison case, and that was not argued under the First Amendment. So there is no case law. After Atlantic and Pacific upholding reciprocity agreements, none, zero. And all the cases that have upheld reciprocity agreements, almost every single one of them did not, was not, they were all decided before Piper and Friedman. Your Honor, you asked how is Arizona discriminating against citizens. Well, under Siena's, what the Court held under the Right to Travel Clause, when California allowed welfare applicants to come in and kept their applicants, kept their benefits the same as what they received in a prior state, that violated the 14th Amendment right to travel. Anderson's right to travel is violated. He is saying to you, I can't come to Arizona. I'm admitted here as a lawyer. I can't come to Arizona. I can't exercise my right to travel. The benefits that are being provided to your lawyers for admission of motion are not denied to me. Over and over, the representation has been to the Court that they can take a bar. Let Judge Smith ask his question. Is that really your best case? I'm sorry, Your Honor? Is that really your best case, the right to travel? This is engraved with wrath. Come on. My best case, Your Honor, is the First Amendment. I understand. The five prongs under the First Amendment that I haven't even been able to begin to address. In this case, we have 24 states that have reciprocity agreements. Is that the Declaration of Independence or the Constitution you're holding up there? I'm sorry? Is that the Declaration of Independence or the Constitution you're holding up there? We the people. We the people. Constitution. So you have the Constitution there, right? Yeah. All the Constitution. Basically, what our arguments are, Your Honor, first of all, the rule's overbroad. They've admitted it has nothing to do with competence. You're saying to attorneys from 10 states, you can't come in here. That's overbroad. Totally overbroad. It's not narrowly tailored. They can't have a buffer zone over 10 states under the Supreme Court's precedent. Okay. I see we're out of time. So if there are no other questions, this case is now submitted on the briefs. Thank you, Mr. Morrison. Thank you as well. Thank you, Your Honor. Thank you.
judges: Nelson, Silverman, Smith